UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIVIAN M. WOODS<br>37A Wild Horse Rd.,<br>Hilton Head, SC 29926<br><br> Plaintiff,<br><br>v.<br><br>EAGLE TECHNOLOGIES, INC.,<br>9301 Annapolis Rd., Suite 200<br>Lanham, MD 20706-3130,<br><br> and<br><br>HEALTH INSURANCE<br>SPECIALISTS, INC.<br>17620A Redland Road<br>Rockville, MD 20855,<br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT AND JURY TRIAL DEMAND

(Violation of the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA")

29 U.S.C. §§ 1024(b)(4), 1132, and 1166)

COMPLAINT SUMMARY

1.  Defendants Eagle Technologies ("Eagle"), Plaintiff's former employer, and Health Insurance Specialists, Inc. ("HIS"), a company Eagle contracted with to provide COBRA services, failed to send Ms. Woods notice of her right to remain in Eagle's health plan after Eagle fired her when she attempted to take unpaid leave to help her sick mother. Specifically, HIS, on behalf of Eagle, mailed COBRA notice to Ms. Woods at an old L Street address in Washington, D.C.,

even though Eagle knew that shortly before her termination Ms. Woods moved to an apartment at a Terrace Road address in the District of Columbia. Eagle also knew that during the relevant time period Ms. Woods received correspondence at her mother's home. The Postal Service later returned as unclaimed the notice HIS mailed to the L Street address. Neither Eagle nor HIS subsequently attempted to send COBRA notice to Ms. Woods at her Terrace Road apartment or at her mother's home. Ms. Woods' health insurance coverage subsequently lapsed. Ms. Woods, underemployed and without health care insurance, later had to undergo surgery and currently has multiple outstanding bills for her medical care. Finally, both Eagle and HIS have refused to provide Ms. Woods with a written description of her health-care plan, a document to which she is entitled by law.

## JURISDICTION

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), as it involves violations of 29 U.S.C. §§ 1024(b)(4), 1132, and 1166.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to the claims set forth herein occurred, or should have occurred, in the District of Columbia.

## PARTIES

4. Plaintiff Vivian M. Woods ("Ms. Woods") resided and worked in the District of Columbia during her employment with Defendant Eagle. Ms. Woods currently resides at 37A Wildhorse Rd., Hilton Head, SC 29926.

5. Defendant Eagle Technologies, Inc., is a corporation organized under the laws of Maryland, with its principal place of business at 9301 Annapolis Rd., Suite 200, Lanham, MD 20706-3130. According to Eagle's website, the company provides "armed and unarmed security officers, background investigations, and training support services to the federal government, commercial, and private sector industries . . . ." At all times relevant to this Complaint, Defendant conducted business in the District of Columbia.

6. Health Insurance Specialists, Inc., is a corporation organized under the laws of Maryland with its principal place of business at 17620A Redland Road, Rockville, MD 20855. At all times relevant to this Complaint, this company served as either the health plan administrator for Eagle, or Eagle contracted with the company to provide COBRA services.

## FACTUAL ALLEGATIONS

7. Vivian Woods began work as a Personnel Security Assistant for Eagle in May 2003 and worked full time from that date until she was fired September 24, 2004.

8. Prior to her termination, Ms. Woods was a reliable employee who had never been reprimanded or disciplined by her employer.

9. During the time of Ms. Woods' employment with Eagle, the company operated as a subcontractor for the National Aeronautics and Space Administration ("NASA"). Eagle assigned Ms. Woods to work at a NASA facility located at 300 East St., S.W., Washington D.C. 20546-0001 ("NASA site").

10. Upon information and belief, Eagle in 2003-04 had over 20 employees at the NASA site and over 100 employees companywide.

11. Ms. Woods worked at the NASA site full time. Ms. Woods' responsibilities included processing paperwork for personnel seeking security clearance at NASA.

12. Eagle provided its employees with group health coverage, and employees paid a portion of the premium.

13. Ms. Woods participated in the Eagle's group health plan during the period of her employment.

14. Upon information and belief, during the period of Ms. Woods' employment, Eagle or Health Insurance Specialists, Inc. ("HIS") served as the plan administrator.

15. Ms. Woods' mother, Deborah Woods, suffers from numerous illnesses and lived in an assisted-living facility in Washington, D.C. until August 2004. In 2004, Deborah Woods inherited a family-owned house in Hilton Head, South Carolina. Deborah Woods consulted with her health-care providers and they determined she was capable of relocating to her home in South Carolina, provided that she could arrange for adequate medical care. Her health-care providers also determined that, given her condition, Deborah Woods would need substantial assistance relocating to South Carolina.

16. In July 2004, Ms. Woods orally requested from her supervisor, Mr. Cardell Bullock, up to 30-days leave to help her mother relocate to South Carolina and to arrange for medical care there. Her supervisor never responded to this request.

17. On August 11, 2004, Ms. Woods by letter requested leave from work to help her mother relocate. Mr. Bullock later informed Ms. Woods her request for leave was denied because she had not provided medical documentation.

18. On or about August 18 and 19, 2004, Ms. Woods again requested leave, this time via email to Eagle President Mr. Nicholas Christiansen, among others. Ms. Woods noted her willingness to work with management regarding the dates of her leave.

19. On or about August 26, 2004, Mr. Bullock, requested that Ms. Woods provide medical documentation of her need to take leave.

20. The Company's letter of termination dated September 22, 2004, ("Termination Letter") states: "On August 26, 2004 you sent another email to Mr. Christiansen stating that you were informed by Cardell Bullock that your request for 30-days leave without pay . . . was denied. . . . Further, you stated that Mr. Bullock informed you that your request for two weeks would be approved once medical documentation was submitted."

21. The following day, August 27, 2004, Ms. Woods provided Mr. Bullock with a Department of Labor form titled, "Certification of Health Care Provider (Family Medical Leave Act of 1993)." This form had been completed by Ms. Woods' mother's clinical psychologist, Jeanette M. Witter, Ph.D. On the form Dr. Witter indicated that, given her medical condition, Deborah Woods would require the assistance of Vivian Woods to relocate to South Carolina. She noted that Ms. Woods would require leave from August 30 to September 30 to help her mother relocate.

22. The Termination Letter on page 2, states: "On August 27, 2004 you sent another email to Mr. Christiansen informing him that all necessary medical

documentation was submitted to Cardell Bullock . . . . Mr. Bullock confirmed [to Eagle management] that he received the medical documentation."

23. On Sunday, August 29, 2004, Ms. Woods called Eagle and left a message that she would be absent Monday, August 30, one day earlier than she had initially planned.

24. Company policy required that employees provide at least four-hours notice of any upcoming absence.

25. Ms. Woods left her message more than four hours before her shift began.

26. On August 31, Ms. Woods left the Washington area with her mother to help her relocate. On multiple occasions thereafter she called and attempted to speak to her supervisor to check in and to reiterate her plans to return to work no later than the end of September. Unable to reach him, she left messages. No one from Eagle returned her calls.

27. At the time Ms. Woods left for South Carolina, she lived at 1001 L St., S.E., Apt. 2, Washington, D.C. 20003 (hereinafter "L Street address").

28. Ms. Woods informed Eagle that during her absence she could also be reached at her mother's South Carolina address, 37A Wildhorse Road, Hilton Head, SC 29926 (hereinafter "Hilton Head address").

29. The Company sent correspondence by mail to Ms. Woods at the Hilton Head address on multiple occasions, including September 10 & 13, 2004, and January 31, 2005.

30. In September, Ms. Woods' entire L Street building was condemned, forcing her to move out of her residence on short notice. She returned to the District for the purpose of relocating to a new apartment.

31. Ms. Woods located an apartment at 2804 Terrace Rd. S.E., Apt B454, Washington, D.C. 20020 (hereinafter "Terrace Road address"). Naylor Gardens Cooperative Housing Association managed the apartment building. Ms. Woods submitted an application for the apartment, and Naylor Gardens requested that her employer complete a form titled, "Request for Employment Verification" ("verification form").

32. On September 16, 2004, Ms. Woods faxed the verification form to the attention of Katie Collins, an Eagle employee, requesting that Eagle verify her employment by completing the form.

33. Katie Collins completed the verification form on September 20, noting on the form that Ms. Woods was employed full time by Eagle and that she was considered reliable.

34. On September 23, Ms. Woods went to Eagle's main office to request a loan from her 401K. While there, she completed a form titled, "Allocated Retirement Account (ARA) Request for New Loan." On this form, which she provided to Eagle, she listed her new Terrace Road address. She also asked to speak with a supervisor, but was informed no one was available.

35. On September 24, 2004, Ms. Woods returned to the company and spoke with Vice President Leonard Kraus. He informed her that the Company had

terminated her employment and handed her the Termination Letter, which purported to memorialize the reasons for her termination.

36. Mr. Kraus thereafter in substance told Ms. Woods that he had no choice but to fire her because she violated company policy, but added that she had performed well while at Eagle and invited her to reapply to work for the company.

37. Mr. Kraus did not advise Ms. Woods of her right to continuation of health care coverage, nor did he provide her with any documentation regarding continuation of health care coverage.

38. The Termination Letter stated that Eagle fired Ms. Woods because she failed to (1) provide 30-days notice of her need to take leave under the Family Medical Leave Act, (2) provide in a timely manner medical documentation of her need for leave, (3) and inform her supervisor that she would not be at work on Monday, August 30, 2004.

39. The following month, Ms. Woods applied for unemployment benefits from the State of Maryland. By letter titled, "Notice of Benefit Determination" ("Notice"), dated October 13, 2004, the State of Maryland, through its Office of Unemployment Insurance ("Office"), notified Ms. Woods that the Office had denied Ms. Woods' application because Eagle had contended that it fired her for gross misconduct. The Notice indicates that the Office mailed copies of the Notice to Eagle and to Ms. Woods and that it was mailed to Ms. Woods at the Terrace Road address. Ms. Woods subsequently appealed this decision.

40. On information and belief, Eagle contracted with HIS to mail COBRA notices, among other services.

41. On information and belief, subsequent to firing Ms. Woods, Eagle erroneously notified HIS that Ms. Woods' last-known address was the now-condemned L Street address.

42. On or about Oct. 27, 2004, HIS sent a COBRA notice on behalf of Eagle via certified mail to Ms. Woods at the L Street address.

43. In November, the Maryland Office of Unemployment notified Eagle that Ms. Woods had appealed the denial of her claim for unemployment benefits and that a hearing would be held on November 11.

44. The notice mailed to Eagle by the Office indicated that Ms. Woods resided at the Terrace Road address.

45. Several days prior to November 11, Eagle contacted the Office and requested an extension of the hearing date. The Office denied this request. The Office held a hearing on November 11 at which Ms. Woods testified. Eagle failed to appear.

46. In an opinion dated November 24, 2004, the Office reversed it previous determination, finding that Ms. Woods was eligible for unemployment benefits because she "was discharged, but not for gross misconduct."

47. The Office mailed the November 24 opinion to both Eagle and to Ms. Woods, and the first page of the decision reflected that it was mailed to Ms. Woods at the Terrace Road address.

48. On or about November 29, the Postal Service returned the COBRA notice – mailed via certified mail to Ms. Woods' old L Street address – to HIS. The envelope noted that the letter had been unclaimed.

49. On information and belief, Eagle was soon thereafter informed by HIS or otherwise learned that the COBRA notice to Ms. Woods had been returned unclaimed.

50. On information and belief, after learning that the COBRA notice did not reach Ms. Woods at her L St. address, Eagle did not inform HIS that Ms. Woods could be reached at both the Hilton Head and Terrace Road addresses.

51. On information and belief, HIS made no effort to determine if Ms. Woods could be reached at another address.

52. Neither Eagle nor HIS subsequently mailed a COBRA notice to Ms. Woods at the Hilton Head or Terrace Road addresses.

53. Ms. Woods did not receive any notice that she had a right to continue her health insurance through the Eagle health care plan.

54. Ms. Woods sought legal advice regarding her dismissal through the Employment Justice Clinic in Washington, D.C. The Clinic contacted Eagle, asserting that firing Ms. Woods to take unpaid time off work to care for her sick mother constituted a violation of the federal Family Medical Leave Act, 29 U.S.C. §§ 2611, *et seq.* Eagle responded that it was not liable under the FMLA, alleging that Ms. Woods failed to provide a 30-day notice of her need for leave. The clinic referred Ms. Woods to J. Thomas Spiggle, her attorney in this action, who filed a complaint on Ms. Woods' behalf with the District of Columbia Office of Human Rights, alleging that Ms. Woods was fired in violation of the DCFMLA, D.C. Code § 32-502, a D.C. law that mirrors the FMLA. To date, the Office is continuing to investigate this matter.

55. Due to the failure of Eagle and HIS to provide Ms. Woods with her right to continuation coverage, her health insurance lapsed, leaving Ms. Woods without any coverage.

56. In 2005, Ms. Woods experienced serious health problems, requiring her to undergo surgery. Ms. Woods lacked health insurance to cover the costs and is currently liable for the full costs of her treatment.

57. By letter dated October 25, 2005, Ms. Woods, through counsel, requested that Eagle provide her a copy of the Summary Plan Description (SPD) for her plan. By letters dated February 15 and March 3, 2006, Ms. Woods notified HIS and again notified Eagle that she wished to a review a copy of her SPD. To date, both HIS and Eagle have refused to provide Ms. Woods with her SPD.

COUNT I
(As to Both Eagle and HIS)
(Failure to Provide COBRA Notice)

58. Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), covered employers must notify, or instruct the plan administrator to notify, terminated employees of their right to maintain health insurance coverage, see 29 U.S.C. § 1166, unless the employee was terminated for gross misconduct.

59. Eagle is covered by the COBRA statutory scheme.

60. Ms. Woods is a participant in Eagle's health care plan.

61. Ms. Woods was not fired for gross misconduct. Eagle fired Ms. Woods after she attempted to take, and believed Eagle had approved, unpaid leave in order to help her sick mother. Ms. Woods was entitled under both D.C. and federal law to take unpaid leave.

62. Eagle knew or should have known by September 20, 2004, that Ms. Woods no longer lived at the L Street address and that she received correspondence at the Terrace Road and Hilton Head addresses.

63. After learning that Ms. Woods' October 27, 2004, COBRA notice was returned unclaimed, HIS should have contacted Eagle to determine if she could be reached at another location.

64. Eagle failed to send or cause to be sent COBRA notice to Ms. Woods in a manner reasonably likely to reach her and thus did not act in good faith to fulfill the COBRA-notice requirement.

65. HIS failed to send or cause to be sent COBRA notice to Ms. Woods in a manner reasonably likely to reach her and thus did not act in good faith to fulfill the COBRA-notice requirement.

COUNT II
(As to Both Eagle and HIS)
(Failure to Provide a Summary Plan Description)

66. Plaintiff Vivian Woods reincorporates by reference allegations set forth in paragraphs 1 - 65.

67. Pursuant to 29 U.S.C. § 1024(b)(4), a plan administrator must provide a copy of the plan's Summary Plan Description ("SPD") to a participant within 30 days of a written request.

68. To date, both HIS and Eagle have refused to respond to Ms. Woods three letters inquiring as to which party serves as her plan administrator and requesting a copy of her SPD.

## JURY TRIAL DEMAND

69. Plaintiff demands a trial by jury.

## REMEDIES

70. WHEREFORE, plaintiff respectfully requests that the Court issue a judgment granting her the following relief from defendants:

    A. Maximum statutory penalties in the amount of $110 per day as provided for in 29 U.S.C. § 1132(c)(1)(B) & (3);

    B. Reimbursement for any health care expenses incurred by Ms. Woods from the date of her termination;

    C. Costs and attorney's fees as provided in 29 U.S.C. § 1132(g); and

    D. Such other relief as the Court deems warranted.

Dated: April 17, 2006                     Respectfully submitted,

                                             J. Thomas Spiggle (D.C. Bar No. 490979)
                                             Janis, Schuelke & Wechsler
                                             1728 Mass. Ave., N.W.
                                             Washington, DC 20036
                                             (202) 861-0600

                                             Counsel for Plaintiff
                                             Vivian M. Woods