IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIVIAN M. WOODS | * |
| Plaintiff | * |
| v. | * Case No: 1:06CV00695 |
| | * Judge: Rosemary M. Collyer |
| EAGLE TECHNOLOGIES, INC. | * |
| Defendants | * |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS, OR IN THE ALTERNATIVE,
## MOTION TO TRANSFER FOR IMPROPER VENUE

Defendant, Eagle Technologies, Inc. ("Eagle"), by its undersigned counsel, moves, pursuant to Fed. R. Civ. P. 12(b)(3), to dismiss this action, or alternatively, transfer it to the United States District Court for the District of Maryland, Southern Division, and states the following as its Memorandum of Law in support thereof:

**I.    THE COMPLAINT.**

Plaintiff, Vivian M. Woods ("Woods"), has filed a two (2)-count Complaint against Defendants, Eagle and Health Insurance Specialists, Inc. ("HIS"), setting forth claims for:

   I.    Failure to Provide COBRA Notice.

   II.   Failure to Provide a Summary Plan Description.

Plaintiff requests that she be awarded: statutory penalties of One Hundred Ten Dollars ($110.00) per day, reimbursement of health care expenses, and costs and attorneys fees, all in an unstated amount.

## II.   FACTUAL BACKGROUND.

Eagle is a corporation organized and existing under the laws of the State of Maryland.  [Affidavit of Nicholas V. Christiansen, Sr. (hereinafter "Affidavit"), ¶ 3]. The principal office of Eagle is located in Prince George's County, Maryland. [Affidavit, ¶ 4]. Eagle does not maintain an office in the District of Columbia.  [Affidavit, ¶ 5].  Eagle is in the business of providing security guards on a contract basis and other security services, primarily to Federal Government agencies. [Affidavit, ¶ 6].

Plaintiff alleges that she is a resident of South Carolina.  [Complaint, ¶ 2].

On May 20, 2003, Woods submitted an application for employment to Eagle. [Affidavit, ¶ 7, Exhibit "A"].  She completed the application at Eagle's offices located at 9301 Annapolis Road, Suite 200, Lanham, Maryland 20706-3130 ("Maryland Office"). [Affidavit, ¶ 8].

On May 21, 2003, Ms. Woods returned to the Maryland Office to accept the offer of employment.  The offer was accepted by her at the Maryland Office. [Affidavit, ¶ 9, Exhibit "B"].  At that time Woods also completed and submitted other preliminary employment documents to Eagle at the Maryland Office. [Affidavit, ¶ 10].

The position accepted by Ms. Woods was as a Personnel Security Assistant at the National Aeronautic and Space Administration ("NASA") Headquarters located 300 E Street, S.W., Washington, D.C.  [Affidavit, ¶ 11].

Eagle does not own or rent office space at NASA Headquarters.  Eagle utilizes that space provided by NASA to it for its security activities. [Affidavit, ¶ 12].

At the time of her hire, Ms. Woods provided information that she resided at 1001 L Street, S.E., #2, Washington, D.C. 20003. She also provided a copy of her Driver's License showing that address. [Affidavit, ¶ 13].

On August 11, 2004, Ms. Woods requested medical leave of thirty (30) days to be with her mother. She provided no documentation of her mother's illness. Consequently, her request for leave was denied. [Affidavit, ¶ 14].

On August 19, 2004, Ms. Woods sent an e-mail stating that she needed to request extended leave for consecutive periods under the Family Medical Leave Act. On August 20, 2004, Ms. Woods was given a copy of the Family Medical Leave Act at the Maryland Office. [Affidavit, ¶ 15].

On August 26, 2004, Ms. Woods sent an e-mail to Mr. Christensen requesting two (2) weeks leave under the Family Medical Leave Act. On August 27, 2004, Ms. Woods provided medical documentation of her mother's illness to the Maryland Office. [Affidavit, ¶ 16].

On August 30, 2004, Ms. Woods was scheduled to work and agreed to work. She failed to show up, called late and left a voicemail message at the Maryland Office. She did not call back until the next day. [Affidavit, ¶ 17].

From September 1 through September 9, 2004, Ms. Woods failed to report for work and did not call in. Her absence was without confirmation from Eagle Technologies, Inc. of granting the requested leave. At no time did Ms. Woods provide thirty (30) days advance notice of this foreseeable leave, together with necessary medical

documentation. Ms. Woods was terminated because she failed to show up for work after assuring her supervisor that she would be there. [Affidavit, ¶ 18].

On September 22, 2004, Ms. Woods was terminated from employment by Leonard T. Kraus, Vice President of Eagle. [Affidavit, ¶ 19, Exhibit "C"].

On September 23, 2004, the termination was confirmed by Nicholas V. Christiansen, Sr., President of Eagle. [Affidavit, ¶ 20, Exhibit "D"].

Ms. Woods came to the Maryland Office to pick up the letters of termination, Exhibits "C" and "D" and signed Exhibit "D" at the Maryland Office acknowledging receipt of her letter of termination. [Affidavit, ¶ 21].

At no time did Ms. Woods indicate that her address was other than 1001 L Street, S.E., # 2, Washington, D.C. 20003 as indicated on the termination letters. [Affidavit, ¶ 22].

On January 4, 2005, Ms. Woods sent Eagle a facsimile letter concerning her check for vacation pay which listed three (3) return addresses on the letterhead. [Affidavit, ¶ 23, Exhibit "E"]. At no time did Ms. Woods indicate that there was a change of address or that she was no longer at the 1001 L Street, S.E., #. 2, Washington, D.C. 20003 address. [Affidavit, ¶ 24].

Eagle contracts with Co-Defendant, HIS, to provide, *inter alia*, service of providing COBRA notices to terminated employees. HIS is Eagle's Health Insurance Plan Administrator. [Affidavit, ¶ 25].

Notice was sent by HIS to the last known address of Woods on October 25, 2004. [Affidavit, ¶ 26, Exhibit "F"].

4

HIS's office is located in Rockville, Maryland. [Affidavit, ¶ 27, Exhibit "F"].

All decisions with respect to termination of Plaintiff were made in the Maryland Office. [Affidavit, ¶ 28].

All records pertaining to Plaintiff's employment and Eagle's employee health insurance program are maintained by Eagle and located at the offices of Eagle in Maryland. [Affidavit, ¶ 29].

**III.    VENUE IS IMPROPER.**

Venue does not properly lie in the District of Columbia. The jurisdiction of this civil action in this court is founded only on Federal question. [Complaint, ¶ 2]. Plaintiff does not allege diversity jurisdiction. Consequently, the applicable venue statute is 28 U.S.C. § 1391(b) which provides:

> (b)    A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

The initial question to be addressed is where the claim arose for venue purposes. In the usual case, a claim arises in only one specific district . *LeRoy, Great Western United Corp.*, 443 U.S. 173, 180 (1978), *Mylan Labs v. Akzo, N.V.* No. 89-1671,

1990WL 58466 (D. D.C., 1990).[1] Here, the employment contract between Plaintiff and Defendant Eagle was entered into in the State of Maryland. The termination of Plaintiff's employment occurred in the State of Maryland. The notice was sent from the State of Maryland. Plaintiff contends the notice should have been sent to her in South Carolina. As the action of termination of Plaintiff's employment took place in Maryland, any alleged concomitant failure to provide COBRA notice or summary plan description would have occurred there as well. Consequently, it is abundantly clear that whatever claims Plaintiff may have, all arose in the State of Maryland.

Pursuant to 28 U.S.C. § 1404(a) this Court may transfer this action to any other district where it might have been brought. Defendants bear the burden of establishing the transfer of the action as proper. *Airline Pilots Ass'n. v. Eastern Airlines*, 672 F. Supp. 525, 526 (D. D.C.1987). The threshold question under § 1404(a) is whether this action might have been brought in Maryland. *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964). In a Federal question action such as this, where the Plaintiff's claims arise out of a

---

[1] The unreported decision in *Mylan Labs v. Akzo, N.V.*, is summarized in *Mylan Laboratories, Inc. v. Akzo, NV.*, 2 F.3d 56, 54, fn. 1 (C.A. 4, 1993):

> The District of Columbia district court transferred the case to the District of Maryland because none of the overt acts Mylan alleged in support of its RICO claims occurred in the District of Columbia, and because all of the other significant events involved in the litigation took place in Maryland. In so ruling, the court relied on *Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir.1978), in which the Court of Appeals for the District of Columbia Circuit held that venue is conferred on a district under the general venue statute, 28 U.S.C. § 1391(b), "where a substantial portion of the acts or omissions giving rise to the actions occurred...." *Id.* at 1134-35. *See Mylan Labs. v. Akzo, N.V.*, No. 89-1671, slip op. at 13, 1990 WL 58466 (D.D.C. Mar. 26, 1990) *(mem.)*. The District of Columbia district court transferred the case to the District of Maryland because none of the overt acts Mylan alleged in support of its RICO claims occurred in the District of Columbia, and because all of the other significant events involved in the litigation took place in Maryland. In so ruling, the court relied on *Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir.1978), in which the Court of Appeals for the District of Columbia Circuit held that venue is conferred on a district under the general venue statute, 28 U.S.C. § 1391(b), "where a substantial portion of the acts or omissions

nucleus of facts that for the most part took place in Maryland, venue is proper in Maryland under 28 U.S.C. 1391 (b)(2), *supra*. The factors to be considered in determining whether a case should be transferred was analyzed at length in *Brannen v. National Railroad Passenger Corporation*, 403 F. Supp. 2d 89 (D.D.C., 2005), where transfer was made from the District of the District of Columbia to the District of Maryland:

> In an action where venue is proper, 28 U.S.C. § 1404(a) nonetheless authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). Under this statute, the moving party bears the burden of establishing that transfer is proper. *Trout Unlimited v. Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C.1996).
> **\*92** Accordingly, the defendants must make two showings to justify transfer. First, the defendants must establish that the plaintiff originally could have brought the action in the proposed transferee district. *Van Dusen*, 376 U.S. at 622, 84 S.Ct. 805. Second, the defendants must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that district. *Trout Unlimited*, 944 F.Supp. at 16.
>
> As to the second showing, the statute calls on the court to weigh a number of case-specific private and public-interest factors. *Stewart Org.*, 487 U.S. at 29, 108 S.Ct. 2239. The private-interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendant's

---

giving rise to the actions occurred...." *Id*. at 1134-35. See *Mylan Labs. v. Akzo, N.V.*, No. 89-1671, slip op. at 13, 1990 WL 58466 (D.D.C. Mar. 26, 1990) *(mem.)*.

choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F.Supp. at 16 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995); *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F.Supp. 1125, 1129 (N.D.Ill.1989); 15 FED. PRAC. & PROC. § 3848). The public-interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.*

As to the first factor, the deference to be afforded to Plaintiff's choice of forum is mitigated because Maryland possesses a significant interest in this suit because all of the material events that constitute the factual predicate for Plaintiff's claims occurred there. *Id.* While Plaintiff's employment led her to provide services within the District of Columbia, the actual hiring and firing and alleged wrongful acts regarding the COBRA notice and summary plan description all occurred in the State of Maryland. Consequently, Plaintiff's choice of forum is not a strong consideration.

On the other hand, examining the second factor, the Defendant's choice of forum is to be afforded greater weight in this case, because the operative facts and alleged wrongful acts all occurred in Maryland and Defendant is both incorporated and wholly located in the State of Maryland. Eagle does not have offices in the District of Columbia.

As to the third factor, whether the claim arose elsewhere, it is clear that whatever claims Plaintiff has, if any, arose or would have arisen in the State of Maryland, as discussed above. Fourth, with respect to the convenience of the parties, there would be

no inconvenience to Plaintiff to litigate in the U.S. District Court for the District of Maryland, Southern Division, as the Court House in Greenbelt is in close proximity and is also within one mile of a Metro station. As to the fifth issue, convenience of the witnesses, and sixth issue, the ease of access to sources of proof, these factors are weighted in favor of venue in Maryland as all of Defendants' witnesses work out of its office in Maryland and the employment records are located there as well. HIS and its records and employees are located in Maryland as well. It would not take Plaintiff any longer to travel to Greenbelt, Maryland, than it would take her to travel to the District of Columbia. *See also, Schmidt v. American Institute of Physics*, 322 F. Supp. 2d 28 (2004).

The public considerations weigh in favor of a transfer to Maryland. Maryland has a greater interest in righting this alleged wrong, which allegedly occurred within its jurisdiction. The relative congestion of the calendars of both the transferor and transferee courts is the same, and there is local interest in deciding local controversies at home.

V.   CONCLUSION.

For the above reasons, this case should be dismissed, or in the alternative, transferred to United States District Court for the District of Maryland.

/s/_____
Richard C. Daniels
D.C. Bar No. 369261

DANIELS & GREEN, L.L.C.
7309 Baltimore Avenue, Suite 217
College Park, MD 20740-3200
(301) 864-1100

/s/_____
James E. McCollum, Jr.
D.C. Bar No. 398117
Carla M. Mathers
D.C. Bar No. 445064

7309 Baltimore Avenue, Suite 117
P.O. Box 1717
College Park, Maryland 20741-1717
(301) 864-6070

Attorneys for Defendant,
Eagle Technologies, Inc.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Memorandum of Law in Support of Motion to Dismiss, or in the Alternative, Motion to Transfer for Improper Venue, was mailed, postage prepaid, this 19th day of May, 2006 to J. Thomas Spiggle, Esq., Janis, Schuelke & Wechsler, 1728 Massachusetts Avenue, N.W., Washington, D.C. 20036.

_____
Richard C. Daniels