## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIVIAN M. WOODS<br>37A Wild Horse Road/Bligen Lane<br>Hilton Head, SC 29926,<br><br>    Plaintiff,<br><br>v.<br><br>EAGLE TECHNOLOGIES, INC.,<br>9301 Annapolis Rd., Suite 200<br>Lanham, MD 20706-3130,<br><br>    and<br><br>HEALTH INSURANCE SPECIALISTS, INC.<br>17620A Redland Road<br>Rockville, MD 20855,<br><br>    Defendants. | Civil Action No. 1:06cv00695 RMC |

### AFFIDAVIT OF VIVIAN M. WOODS

1. I, Vivian M. Woods, am the Plaintiff in this matter. I am over 21 years old. I am competent to testify about the matters in this affidavit, and my statements are based upon personal knowledge.

2. I submit this affidavit in opposition to Defendant Eagle Technologies, Inc.'s, ("Eagle") Motion to Dismiss, or in the Alternative, Motion to Transfer for Improper Venue.

3. I began my employment with Eagle in May 2003. From that point until Eagle fired me in September 2004, with very few exceptions, all of my job-related activities took place in the District of Columbia.

4. During the entire period of my employment with Eagle, I worked in the District of Columbia. I was assigned to work, during that entire period, at the National Aeronautics and Space Administration ("NASA") facility located at 300 East St., S.W., Washington, D.C. 20546 ("NASA site"). I did not work at any other Eagle location.

5. I lived in the District of Columbia during the entire time that I worked for Eagle.

6. At the NASA site I had a cubical where I kept all of my work-related belongings. This was my permanent space. I had a key to the storage space in that area. My direct Eagle supervisor, Cardell Bullock, had an office at that same NASA site.

7. In addition to Mr. Bullock, NASA employees supervised my work.

8. During the period when I was assigned to work at the NASA site, Eagle had a number of areas at the NASA site that it occupied full time. I estimate that 20 Eagle employees worked at NASA.

9. When I needed to send paperwork or other communications to Eagle's Maryland office, I would give the material to Mr. Bullock at the NASA site, and he would deliver it to the Maryland office. He would likewise deliver to me at the NASA site correspondence and oral messages from personnel at the Maryland office.

10. The only times I can recall going to Eagle's office in Maryland were when I interviewed for my position, once to turn in paperwork for a loan from my 401K, and then on the day I was terminated.

11. Except for correspondence sent to me in South Carolina, any correspondence I received from Eagle was sent to me in the District.

12. My wages from Eagle were deposited into my bank account with the NASA Federal Credit Union.

13. I completed the paperwork at the NASA site to enroll in Eagle's health-insurance plan. Any information I received regarding my health plan I either received through Mr. Bullock at the NASA site, or via U.S. Mail at my apartment in Washington, D.C.

14. Through the Eagle health-care plan I received treatment at the Columbia Hospital for Women at 2425 L Street, NW, Washington, DC 20037.

15. All of my communications with Eagle regarding my request to take unpaid leave to care for my sick mother occurred at, or originated from, the NASA site.

16. It would be difficult for me to proceeded with my lawsuit in Greenbelt, Maryland, because: my attorney is located in the District; I am familiar

with the District and can more easily arrange for places to stay there; and moving my case to a court away from my attorney's office and further away from my home in South Carolina would be a burden to me as it would add to my travel costs.

I declare that under penalty of perjury that the foregoing is true and correct. Executed on this the ___6th___ of June 2006

*(signature)*
Vivian M. Woods, Plaintiff