UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIVIAN M. WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Case Number 1:06CV00695 (RMC) |
| | ) |
| EAGLE TECHNOLOGIES, *et al.,* | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT EAGLE TECHNOLOGIES' REPLY TO OPPOSITION TO
MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION
TO TRANSFER VENUE**

Defendants, Eagle Technologies, Inc. ("Eagle"), by and through undersigned counsel, hereby replies to Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue.

**I.    Introduction**

Plaintiff contends that resolution of the venue question is controlled by 29 U.S.C. § 1132(e)(2), which comprises ERISA's jurisdiction and venue provision, rather than 28 U.S.C. § 1391(b). Plaintiff further contends that under §1132(e)(2), Eagle's contacts are sufficient to permit it "to be found" in the District of Columbia thereby justifying venue in the District of Columbia. However, the Complaint does not allege that venue is controlled by the provisions of 29 U.S.C. § 1132(e)(2). Rather, Plaintiff relies solely on the general venue provisions listed in 28 U.S.C. §1391(b). (Complaint ¶ 3). The Complaint, on its face, fails to allege venue under the special provision in 29 U.S.C. § 1132(e)(2), which as will be shown, also permits a case to be litigated in the forum in which the plan is administered, in this case, Maryland.

Plaintiff cites *Flynn v. Veazy Construction Corp.,* 310 F.Supp.2d 186 (D.D.C. 2004) for the proposition that ERISA's special venue provision requires litigation of this action in the District of Columbia. *Flynn* does not address the venue provision's "may be found" prong; rather it address the section which permits an ERISA account to be litigated where a plan is administered:

> By allowing the action to occur in the district where the plan is administered, the special venue provision makes collection efforts efficient, economical and inexpensive for ERISA funds, fulfilling Congress' intent to protect the financial integrity of such funds. *Flynn,* 310 F.Supp.2d at 193.

*Flynn* can not be read to imply that this action should be maintained in the District of Columbia because Eagle may be found in the District of Columbia. On the contrary, *Flynn* permits the action to be filed in the most convenient forum, in that case, the forum in which the plan was administered. Likewise, under *Flynn,* the ERISA venue provision would permit this action to be held in Maryland where the plan is administered.

Even if the Court found that 29 U.S.C. §1132 governed venue, both plan administration in Maryland and the nature of the contacts that Eagle has with the District of Columbia suggest that Maryland is the proper forum. Finally, this Court is not required to ignore the general venue provision in 28 U.S.C. §1391 or the factors weighing in favor of transfer under 28 U.S.C. §1404(a) even in ERISA cases.

II.     **The Contacts are Insufficient to Determine that Eagle can "be Found" in the <u>District of Columbia</u>**

Recent cases in the District of Columbia indicate that a forum is proper "if the activities transpired in the forum district were not insubstantial in relation to the totality of the events giving rise to plaintiff's grievance." *El-Bey v. United States of America,* 2004 WL 2418306 (D.D.C. Sept. 28, 2004)(unreported), *citing, Lamont v. Haig,* 590 F.2d

1124, 1134 n. 62 (D.C. Cir. 1978); *Thornwell v. United States,* 471 F.Supp. 344, 356 (D.D.C. 1979). The Court in *National Air Traffic Controllers,* an ERISA case, stated that "[a]lthough the Court affords some deference to the plaintiffs' choice of forum, such deference would be misplaced under these circumstances because the District of Columbia lacks sufficient ties to the parties, facts and claims in the controversy." 407 F. Supp.2d at 3 (internal citations omitted). Standing alone, ties to the forum are insufficient, those ties must also be meaningful. *Kafack v. Primerica Life Ins. Co.,* 934 F.Supp. 3, 6-7 (D.D.C. 1996).

Ms. Woods claims that Eagle had a sufficient presence in the District of Columbia because both she and her direct supervisor were physically located on the NASA premises. Opp. At 8. However, the issue here involves communications regarding Ms. Woods benefits and communications regarding her termination which occurred solely within Maryland. Therefore, Ms. Woods' physical presence is not a meaningful "tie" to the forum. Eagle's contacts or ties must be "of a quality and nature such that it is reasonable and fair to require it to conduct its defense" in the forum. *I.A.M. National Pension Fund v. Wakefield Industries, Inc.*, 699 F.2d 1254, 1258 (D.C.Cir. 1983). A defendant may be found in a jurisdiction if one of two tests are met: 1) "if the nonresident defendant's activities within a state are substantial or continuous and systematic, there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities; and 2) if the defendant's activities are not so pervasive as to subject him to general jurisdiction, … jurisdiction … turns on an evaluation of the nature and quality of

the defendant's contacts in relation to the cause of action." *Id.* at 1258 (internal quotations omitted).

The cause of action here relates to whether Ms. Woods was given appropriate notification of her COBRA rights after she left Eagle's employ and to whether she was given a copy of the plan description after she left defendant's employ and moved from the District of Columbia. The allegedly defective notification was issued from the corporation's headquarters in Maryland. The letter was not drafted in the District of Columbia. In Ms. Woods' second alleged ERISA violation, the District of Columbia was also not implicated. The request for the plan would presumably have been made after Ms. Woodsmoved from the District of Columbia. The request would have been made to the administrative offices in Maryland. Again, the nature of the contact indicates that as related to the cause of action, the nature of the contacts were insubstantial.

**III.   Even under Erisa's Venue Provisions, Transfer to Maryland is Still Warranted**

In *National Air Traffic Controllers Association v. Dental Plans, Inc.,* 407 F.Supp. 2d 1 (D.D.C. 2005), Judge Leon determined that though the contacts were substantial enough that the defendant may have been found in the District of Columbia under 29 U.S.C. §1132, nevertheless, transfer to the Northern District of Georgia was still proper. Even though the parties relied upon the ERISA venue provisions, the court was not prohibited from also considering the transfer factors in 28 U.S.C. §1404(a).

Transfer of venue can be effected under the provisions of 28 U.S.C. §1404(a) which provides, in pertinent part, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1414(a) "vests discretion in the

4

district court to adjudicate motions to transfer according to [an] individualized, case by case consideration of convenience and fairness." *Schmidt v. American Institute of Physics,* 322 F.Supp.2d 28 (D.D.C. 2004), *citing Stewart Org., Inc. v. Ricoh Corp.* 487 U.S. 22, 27, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).  Thereafter several private interest and public interest factors are considered to determine whether the case should be transferred. *Schmidt v. American Institute of Physics,* 322 F.Supp.2d at 31-32.  Those factors include an analysis of the plaintiff's chosen forum, the transferee forum, the location where the events occurred, the convenience of the parties, witnesses and the ease of access to sources of proof. *Trout Unlimitied v. Dep't of Agric.,* 944 F.Supp. 13, 16 (D.D.C. 1996).

The plaintiff's choice of forum is a factor that merits less deference when the chosen forum "has no meaningful ties to the controversy, and no particular interest in the parties or subject matter." *Pyrocap International Corp., v. Ford Motor Co.,* 259 F.Supp.2d 92, 96 (D.D.C. 2003); *Schmidt v. American Institute of Physics,* 322 F.Supp.2d at 33; *Chung v. Chrysler Corp.,* 903 F.Supp. 160, 165 (D.D.C. 1995).   This is particularly true when the forum state is not the home state of the plaintiff. *Pyrocap* 259 F.Supp.2d at 95. *citing, Gemological Inst. Of Am., Inc. v. Thi-Dai Phan,* 145 F.Supp.2d 68, 71 (D.D.C. 2001); *DeLoach v. Philip Morris Co., Inc.,* 132 F.Supp.2d 22, 24 (D.D.C. 2000)("numerous cases in this Circuit recognize that such a choice receives substantially less deference where plaintiffs, as here, neither reside in, nor have any substantial connection to, that forum.").   Ms. Woods resides in South Carolina. (Complaint ¶ 4). Ms. Woods has not lived or worked in the District of Columbia since August 31, 2004. (Complaint ¶ 26.).  For nearly two years, Ms. Woods has had no connection to the

5

District of Columbia. As has been argued, Eagle's minimal contacts with the District of Columbia merits transfer to the more appropriate forum – Maryland.

The operative facts that are alleged to have violated federal law occurred in Maryland. The group health plan that Ms. Woods participated in was administered from Eagle's headquarters in Maryland. (Complaint ¶ 6.). Ms. Woods allegedly requested leave on August 18 or 19, 2004, from Eagle President Nicholas Christiansen, in Maryland. (Complaint ¶ 18.). The termination letter referred to in the Complaint was drafted and posted from Maryland. (Complaint ¶ 20-22.). Ms. Woods alleges that Eagle sent correspondence to her in South Carolina from its Maryland headquarters. (Complaint ¶29.).

Ms. Woods allegedly went to Eagle's headquarters in Maryland and informed them of her new address. (Complaint ¶ 34.). She returned the following day to Eagle's headquarters in Maryland and allegedly spoke with the Vice President Leonard Kraus. (Complaint ¶ 35.). The entire conversation about her termination and the alleged failure to mention the continuation of health care coverage with Mr. Kraus occurred in Eagle's office in Maryland. (Complaint ¶ 35-37). Ms. Woods applied for unemployment benefits from the State of Maryland. (Complaint ¶ 39). A hearing was held in Maryland on the matter on November 11, 2004. *Id.* As in *Pyrocap,* "the *gravamen* of this case involves defendants' alleged knowledge and conduct," that overwhelmingly occurred in Maryland.

The defendants, the witnesses, the relevant documents all are located in Maryland. The convenience of the parties weighs heavily in favor of transferring the case to Maryland. *See Wilderness Soc. V. Babbitt,* 104 F.Supp.2d 10, 15 (D.D.C. 2000). Though

6

Ms. Woods' Opposition relies, in part, upon *Flynn,* to deny transfer because there ". . .the Plaintiff represented that 'several witnesses and records are located in the District of Columbia.'" Opp. P. 11.  Ms. Woods asserts that "the same is true in this case." *Id.*  Yet, Ms. Woods points to no witnesses in the District of Columbia nor any records in the District of Columbia.  Given that Ms. Woods now apparently resides in Hilton Head, South Carolina, it is doubtful that she maintains any records in the District of Columbia.  Ms. Woods will not be prejudiced as she must travel from her home in South Carolina to pursue this case whether it is in Maryland or the District of Columbia.  Plaintiff has identified no other witnesses who would be compromised by the transfer to Maryland.  *McClamrock v. Eli Lilly and Co.,* 267 F.Supp.2d 33, 38 (D.D.C. 2003).

       The public interest factors also weigh in favor of transfer to Maryland.  The factors include the congestion of the respective calendars, the application of local law and the interest in the resolution of local matters.  *Schmidt v. American Institute of Physics,* 322 F.Supp.2d at 34-35.  Because the case is still in the early stages, the Court has not yet spent an overwhelming amount of time considering the case and the Maryland court would be in nearly the same position as the District of Columbia court.  The case involves the application of federal law which does not implicate the local laws from either jurisdiction.  Further, "a transferee federal court is competent to decide federal issues correctly." *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1175 (D.C. Cir. 1987).  Finally, both of the defendants reside and do business in Maryland and Maryland has a greater interest in resolving disputes concerning its citizens.  As a result the public interest factors also weigh in favor of transfer.

**IV.**     **Conclusion**

WHEREFORE, for the reasons more fully set forth above, Eagle moves this Court to dismiss the case for improper venue or in the alternative to transfer the case to the United States District Court for the District of Maryland.

Respectfully submitted,

_____/s/_____
James E. McCollum, Jr.
(D.C. Bar No. 398117)
Carla M. Mathers
(D.C. Bar No. 445064)
7309 Baltimore Avenue, Suite 117
P.O. Box 1717
College Park, MD  20741-1717
Telephone:  (301) 864-6070
Facsimile:   (301) 864-4351

_____/s/_____
Richard C. Daniels
(D.C. Bar No. 369261)
Daniels & Green
College Park Center
7309 Baltimore Avenue, Suite 217
College Park, MD  20740
Telephone:  (301) 864-1100
Facsimile:   (301) 864-1277

*Attorneys for Defendant*
*Eagle Technologies, Inc.,*

June 20, 2006

## Certificate of Service

I hereby certify that a copy of the foregoing was sent, first-class mail, postage prepaid, this __20th__ day of _June_____, 2006, to:

J. Thomas Spiggle, Esq.
1728 Massachusetts Ave., N.W.
Washington, D.C.  20036

Dennis John Quinn, Esq.
Kelly Marie Lippincott, Esq.
Carr Maloney PC
1615 L Street, NW, Suite 500
Washington, D.C.  20036

_____/s/_____
Carla M. Mathers