UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIVIAN M. WOODS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EAGLE TECHNOLOGIES, INC., *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 06-695 (RMC) |

## MEMORANDUM OPINION AND ORDER

Defendant Eagle Technologies Inc. ("Eagle") is a Maryland corporation that contracts to provide security services to federal agencies. Eagle hired Plaintiff Vivian Woods to work as a security guard at the National Aeronautic and Space Administration ("NASA") headquarters in the District of Columbia, where she worked from May 2003 until her termination in September 2004. In this action, Ms. Woods alleges that Eagle and its health insurance plan administrator, Defendant Health Insurance Specialists Inc., failed to send a COBRA notice[1] to her proper D.C. address, mailing it instead to a D.C. address they knew to be outdated and, when it was returned as unclaimed, failing to forward it to her proper D.C. address (or to her mother's home in South Carolina, where they knew she could also be contacted). As a result, Ms. Woods failed to maintain

---

[1] The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub. L. 99-272, 100 Stat. 82, 222-237 (1985), 29 U.S.C. § 1161 *et seq.*, "authorizes a qualified beneficiary of an employer's group health plan to obtain continued coverage under the plan when he might otherwise lose that benefit for certain reasons, such as the termination of employment." *Geissal v. Moore Med. Corp.*, 524 U.S. 74, 76 (1998). "The statute requires plans to advise beneficiaries of their rights under COBRA . . . within 14 days of learning of a qualifying event, after which qualified beneficiaries have 60 days to elect continuation coverage." *Id.* at 80 (citations and footnote omitted). Ms. Woods also alleges that she was not provided with a written description of her health care plan, as required by law. Compl. ¶ 1.

her insurance coverage and experienced high medical bills when she was forced to undergo surgery. Before the Court is Eagle's motion to dismiss for improper venue or, in the alternative, to transfer the action to the District of Maryland. Health Insurance Specialists Inc. does not join in this motion.

## I. DISCUSSION

### A. Motion to Dismiss

To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat the plaintiff's assertion of venue. *2215 Fifth St. Assocs. v. U-Haul Int'l Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (2d ed. 1987)). If venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Eagle argues that venue is improper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Ms. Woods' claim did not occur in the District of Columbia and no defendant resides here. *See* Def.'s Mot. at 5-6. Although Ms. Woods' Complaint rests its venue allegations on that general statute, she also argues that she is entitled to rely on ERISA's special venue provision. The Court agrees.

ERISA, as amended by COBRA, provides that venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides *or may be found*." 29 U.S.C. § 1132(e)(2) (emphasis added). For venue purposes, a defendant may be "found" in "any district where [its] contacts are sufficient to satisfy the 'minimum contacts' test for personal jurisdiction as defined by *International Shoe Co. v. State of Washington*, 326 U.S. 310, 318-19 (1945)." *I.A.M. Nat'l Pension Fund v. Wakefield Indus.*, 699 F.2d 1254, 1257 (D.C. Cir. 1983)

(internal quotation marks omitted) (adopting *Varsic v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 607 F.2d 245 (1979)).  The question, then, is whether Eagle "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (alteration in original).

The *International Shoe* test is satisfied here.  Although Eagle is headquartered in Lanham, Maryland, *see* Christiansen Aff. ¶ 4, and maintains no formal office space in the District of Columbia, *id.* ¶ 5, several areas at NASA headquarters are dedicated to Eagle's full-time use.  *See id.* ¶ 12; Woods Aff. ¶ 8.  Some twenty Eagle employees worked at the NASA site during Ms. Woods' tenure, Woods Aff. ¶ 8, and Ms. Woods' direct Eagle supervisor, Cardell Bullock, kept an office there, *id.* ¶ 6.  Although Ms. Woods sometimes traveled to Eagle's headquarters to complete human-resources paperwork, for example, to apply for and accept her position, and to receive her termination letter, *id.* at 10; Christensen Aff. ¶¶ 8-9, 21, she submitted other paperwork and correspondence to Mr. Bullock at NASA headquarters, who acted as a local intermediary, Woods Aff. ¶ 9.  And Ms. Woods states that she "completed the paperwork at the NASA site to enroll in Eagle's health-insurance plan."  *Id.* ¶ 13.  The Court concludes that these contacts with the District of Columbia are more than sufficient to establish minimum contacts.  Eagle should have reasonably anticipated having to litigate a matter arising directly from those contacts in this jurisdiction,[2] and cannot say with a straight face that it would offend traditional notions of fair play and substantial

---

[2] The Court also observes that Eagle is licensed and registered to do business in the District of Columbia.  *See* http://www.etisecurity.com/statelicenses.htm (last visited Aug. 1, 2006).

justice to require it to defend itself in this forum. *See Helmer*, 393 F.3d at 205. Eagle may therefore be "found" in the District of Columbia, and venue is proper here. Accordingly, the motion to dismiss will be denied. *I.A.M. Nat'l Pension Fund*, 699 F.2d at 1257.

**B. Motion to Transfer Venue**

Eagle alternatively moves to transfer venue to the District of Maryland pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The D.C. Circuit "'has said that it is perhaps impossible to develop any fixed general rules on when cases should be transferred.'" *SEC v. Savoy Indus. v. Zimmerman*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Starnes v. McGuire*, 512 F.2d 918, 929 (D.C. Cir. 1974) (en banc)). "[T]he proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness." *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Section 1404(a) is rooted in the earlier doctrine of *forum non conveniens*. *Id.* at 1154. Although courts have "more discretion to transfer under § 1404(a) than they ha[ve] to dismiss on grounds of *forum non conveniens*," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981), they are guided by similar factors in both contexts — namely, the private and public interests at stake. *See Savoy Indus.*, 587 F.2d at 1154. Accordingly, the defendant must make two showings to justify transfer. First, a defendant must establish that the plaintiff originally could have brought the action in the proposed transferee district.[3] *Van Dusen v. Barrack*, 376 U.S. at 622. Second, the defendant must demonstrate that considerations of convenience and the interest of justice weigh in favor of

---

[3] It is not contested that venue would be proper in the District of Maryland, where both Defendants are incorporated. Therefore, the District of Maryland is a "district . . . where [the action] might have been brought." 28 U.S.C. § 1404(a).

transfer to that court. *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). As this Court has explained,

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Thayer/Patricof Educ. Funding LLC v. Pryor Res.*, 196 F. Supp. 2d 21, 31-32 (D.D.C. 2002) (omission in original). The party seeking transfer generally bears the burden of demonstrating that the balance of convenience of the parties and witnesses and the interest of justice are in its favor, *id.* at 31; *see Savoy Indus.*, 587 F.2d at 1154 (describing the district court's denial of a motion to change venue as a ruling that the movant "had failed to shoulder his burden"), and the plaintiff's choice of forum is ordinarily afforded great deference, *Thayer/Patricof*, 196 F. Supp. 2d at 31.

### 1. Private Interest Factors

In balancing the interests, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255. This preference is strengthened here by ERISA's liberal venue provision. *See, e.g.*, *Flynn v. Veazey Constr. Corp.*, 310 F. Supp. 2d 186, 193 (D.D.C. 2004) ("In the ERISA context, a defendant seeking a transfer of venue has the additional burden of surmounting ERISA's special venue provision."); *cf. Thayer/Patricof*, 196 F. Supp. 2d at 37 n.9 (noting, in the securities law context, that "the presumption in

favor of a plaintiff's choice of forum is even stronger" where a "liberal venue provision represents an affirmative congressional policy choice to allow plaintiffs . . . the widest possible choice of forums in which to sue" (citation and internal quotation marks omitted)).  Thus, although ERISA's special venue provision does not establish a "privilege" in favor of plaintiffs that would render § 1404(a) transfers unavailable to defendants, it is quite clearly "a factor to be considered" in the balance.  *Cf. Savoy Industs.*, 587 F.2d at 1155.  The parties' respective forum choices thus weigh heavily in favor of retaining venue in the District of Columbia.

        The other private interest factors are largely a wash.  The claim might be said to have arisen either in Maryland, where Defendants failed to forward the COBRA notice, or in the District, where they were obligated to deliver it.  There is no indication that either party — or their witnesses — would be unable or unwilling to travel to the District.  *See Thayer/Patricof*, 196 F. Supp. 2d at 33 ("To support its request for transfer under section 1404(a), a moving party must demonstrate . . . what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction.").  And, to the extent that relevant documents are located in Maryland, there is no suggestion that they are so numerous that photocopying or electronic production would be impracticable.  *See id.* at 36 ("[T]he location of documents, given modern technology, is less important in determining the convenience of the parties.").

        **2. Public Interest Factors**

        The public interest factors are neutral or weigh slightly in favor of retaining venue in the District of Columbia.  Eagle offers no reason to believe that the courts in Maryland have any greater expertise in trying ERISA cases, and the Court can imagine none.  Eagle likewise musters

no argument regarding the relative congestion of the two courts.  Finally, although Maryland certainly has an interest in ensuring that its corporate citizens comply with federal law, the District of Columbia has a similar interest in ensuring that those who work here enjoy the benefits and protections of those laws.

On balance, and giving due consideration to the "special weight [accorded] to a plaintiff's choice of forum in ERISA cases," *Flynn*, 310 F. Supp. 2d at 193, the Court finds that Eagle has failed to meet its burden of demonstrating that the balance of convenience of the parties and witnesses and the interest of justice weigh in favor of transferring venue to the District of Maryland.  *See Thayer/Patricof*, 196 F. Supp. 2d at 31; *Savoy Industs.*, 587 F.2d at 1154.[4]

## II. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Eagle Technologies Inc.'s Motion to Dismiss or, in the alternative, Motion to Transfer Venue [Dkt. ##4, 5] is **DENIED**; and it is

**FURTHER ORDERED** that this matter shall be set for a scheduling conference at a date and time to be selected by the Deputy Clerk.

**SO ORDERED**.

Date: August 3, 2006                                     /s/
                                         ROSEMARY M. COLLYER
                                         United States District Judge

---

[4] That Ms. Woods filed a separate but related claim before the D.C. Office of Human Rights, Pl.'s Opp'n at 12, which Eagle asserts has now been dismissed, Def.'s Supp. Memo at 1-2, plays no role in the Court's decision.  Moreover, Eagle's suggestion that the Complaint should be dismissed because it is "now clear" that Ms. Woods was terminated for gross misconduct, an argument raised for the first time in a Supplemental Memorandum filed two days ago without leave of Court, *id.* at 2-4, rests on disputed issues of material fact, *see* Pl.'s Opp'n at 4, and is an inappropriate basis for a motion to dismiss.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (stating standard).  Thus, to the extent that this late argument might be construed as a distinct motion to dismiss, it is denied without prejudice.